# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sheila A.,<br><br>     Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>     Defendant. | Case No. 17-cv-2161 (HB)<br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge[1]

   Pursuant to 42 U.S.C. § 405(g), Plaintiff Sheila A. seeks judicial review of a final decision by the Acting Commissioner of Social Security denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The case is before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 17, 22]. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

## I.  Procedural Background

   Plaintiff filed an application for DIB on March 22, 2015, alleging she was not able to work as of July 18, 2013, because of a disabling condition. (R. 215-19.) [2] She filed an application for SSI on September 7, 2015. (R. 223-26.) Plaintiff claimed impairments of

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

[2] The Social Security Administrative Record ("R.") is available at Doc. No. 9.

chronic pain, back injury, neck injury, prolonged recovery, and depression. (R. 71.) Her applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). The hearing was convened on November 22, 2016. (R. 41-70.) Plaintiff and vocational expert Norman Mastbaum testified.

The ALJ issued an unfavorable decision on January 26, 2017. (R. 8-22.) Pursuant to the five-step sequential evaluation procedure outlined in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since July 18, 2013. (R. 13.) At step two, the ALJ determined that Plaintiff had severe impairments of "degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; possible ankylosing spondylitis; chronic pain syndrome or somatic symptoms disorder; anxiety; and depression." (R. 13.) The ALJ found at the third step that no impairment or combination of impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 14.)

At step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform sedentary work that allowed for a brief change of position from sitting to standing every thirty minutes, and that was routine, repetitive, and simple work. (R. 16.) With that RFC, the ALJ concluded that Plaintiff could not perform her

---

[3] An RFC assessment measures the most a person can do, despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

past relevant work as a prop attendant/photo stylist. (R. 20.) At step five of the sequential analysis, however, the ALJ determined that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy, specifically the occupations of account clerk, optical goods worker, and surveillance system monitor. (R. 21.) Therefore, the ALJ found Plaintiff was not disabled.

Plaintiff sought review by the Appeals Council, which denied the request. (R. 1.) The ALJ's decision thus became the final decision of the Commissioner. (R. 1.) Plaintiff then commenced this action for judicial review. She contends the ALJ (1) erred in assessing the credibility of her subjective complaints; (2) erred in evaluating the opinions of her treating providers; and (3) erred at step five of the sequential evaluation by posing a hypothetical question that did not set forth all of her impairments. (Pl.'s Mem. Supp. Mot. Summ. J. at 30 [Doc. No. 19].)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*,

201 F.3d 1010, 1012 (8th Cir. 2000)).  The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently.  *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision.  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995).  The claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The disability, not just the impairment, must have lasted or be expected to last at least twelve months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

III.    **Discussion**

   A.    **Whether the ALJ Failed to Properly Evaluate Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred in evaluating the intensity, persistence, and limiting effects of her symptoms.  It is well-established that an ALJ must consider several factors, in addition to the objective medical evidence, in assessing the credibility of a claimant's subjective symptoms: daily activities; work history; intensity, duration, and frequency of

symptoms; any side effects and efficacy of medications; triggering and aggravating factors; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *5 (S.S.A. Mar. 16, 2016) (listing the same factors as relevant in evaluating the intensity, persistence, and limiting effects of a person's symptoms). But the ALJ need not explicitly discuss each factor, *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005), and a court should defer to the ALJ's credibility findings when the ALJ expressly discredits the claimant and provides good reasons for doing so, *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).

Here, the ALJ specifically discussed the objective medical evidence and explained how Plaintiff's subjective complaints were inconsistent with that evidence. (R. 17-19.) The ALJ also explicitly discussed Plaintiff's daily activities and work history and explained how those factors weighed against the claimed severity and limiting effects of her symptoms. (R. 19-20.) Ultimately, the ALJ determined that the severity, persistence, and limiting effects of Plaintiff's subjective complaints were not as significant as Plaintiff claimed. (R. 16.)

### 1.    Activities of Daily Living

Plaintiff first contends the ALJ mischaracterized her daily activities. (Pl.'s Mem. Supp. Mot. Summ. J. at 36-37.) In the ALJ's decision, the ALJ identified evidence that Plaintiff had friends and romantic relationships, maintained social relationships, socialized with friends twice a week, drove herself to medical apartments or managed to use medical cabs or public transportation, shopped for groceries, prepared simple meals,

loaded the dishwasher, performed light cleaning, and went swimming at a lake. (R. 19-20.) Plaintiff does not actually identify any misstatements or mischaracterizations by the ALJ, and the Court finds daily activities recounted by the ALJ well-supported by the record. The ALJ found Plaintiff's daily activities inconsistent with the severity of symptoms and limiting effects she claimed, and substantial evidence supports this determination.

Plaintiff argues the ALJ erroneously considered her ability to do these daily activities to find that she could perform full-time competitive work, but that argument misstates the context of the ALJ's discussion. The ALJ considered Plaintiff's daily activities in assessing whether the severity, persistence, and limiting effects of Plaintiff's subjective complaints were as significant as she claimed. An ALJ's consideration of daily activities in that context is not only allowed, but required, under the applicable law and administrative framework. *See Polaski*, 739 F.2d at 1322; SSR 16-3p, 2016 WL 1119029, at *5.

### 2. Side Effects of Medication

Plaintiff next argues the ALJ failed to account for her medication side effects when evaluating her symptoms. Plaintiff testified at the hearing that her muscle relaxant medication made her feel sleepy, sedated, and drowsy, and that she did not drive or "do much at all" when she took it. (R. 53.) Plaintiff also testified that medication for her anxiety and depression caused attention and concentration problems. (R. 54.)

Plaintiff's reports of side effects from medication are sporadic in the record. (*E.g.*, R. 1218, 1230, 1246, 1270-74, 1368, 1370.) When evidence of side effects is sparse, the

ALJ does not err in disregarding it. *Evans v. Colvin*, No. 14-cv-1011 (JRT/TNL), 2015 WL 5009327, at *25 (D. Minn. Aug. 24, 2015). Moreover, when Plaintiff did mention side effects to her providers, the side effects frequently were not significantly limiting, or her prescription was changed. (*E.g.,* R. 62, 1220, 1224, 1229, 1232, 1246, 1248, 2073, 2090.) Finally, contrary to Plaintiff's testimony concerning mental side effects, mental status examination progress notes often indicated that Plaintiff was alert, oriented, and able to concentrate and pay attention. (*E.g.*, R. 1360-61, 1369, 1380-81, 1502-03, 1564-65, 1608, 2069-87.)

An ALJ does not err by not discussing explicitly a particular *Polaski* factor as long as the ALJ identifies inconsistencies in the record as a whole and gives good reasons for discounting credibility. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). Here, the ALJ did not err by failing to discuss explicitly the side effects from Plaintiff's medications.

### 3. Complaints of Fatigue

Plaintiff next faults the ALJ for not asking her about her fatigue and how it affects her daily activities. (Pl.'s Mem. Supp. Mot. Summ. J. at 37.) The Court finds the ALJ did not err in this respect. The record contains sparse evidence of fatigue, mainly in the form of Plaintiff's self-reports, and her providers did not treat it as a significant symptom or condition. (*E.g.*, R. 1132-35, 1338, 1529-32, 1692-1702.) Plaintiff does not explain why the ALJ should have asked specific questions about her fatigue. Moreover, the ALJ asked Plaintiff at the hearing why she was unable to work and how her pain affected her, but Plaintiff did not mention fatigue. (R. 48-49, 53.) Nor did Plaintiff's attorney ask her

about fatigue at the hearing.  (R. 59-62.)  Consequently, the Court finds the ALJ did not

err in failing to ask Plaintiff specifically about her subjective complaint of fatigue.

### 4.      Flareups of Pain

Plaintiff claims the ALJ erred in assessing her subjective complaints by not

considering specifically how flareups in pain would affect her daily activities and ability

to work.  (Pl.'s Mem. Supp. Mot. Summ. J. at 35.)  Relatedly, Plaintiff argues that the

ALJ failed to consider how painful flareups affect her depression.  (Pl.'s Mem. Supp.

Mot. Summ. J. at 38.)  The Court finds that the ALJ properly considered the severity,

persistence, and limiting effects of Plaintiff's subjective complaints together, and was not

required to assess independently the intensity, persistence, and limiting effects of each

subjective complaint, such as pain flareups.  Plaintiff's pain flareups were a particular

manifestation of her pain, which the ALJ discounted as inconsistent with the objective

medical evidence, daily activities, and work history.  The reasons the ALJ gave for

discounting the severity and limiting effects of Plaintiff's claimed pain in general would

also apply to any specific manifestations of pain.  In addition, an ALJ is not required to

discuss every piece of evidence in the record.  *Wildman v. Astrue*, 596 F.3d 959, 966 (8th

Cir. 2010).

### 5.      Patient Health Questionnaire Scores

Next, Plaintiff contends the ALJ failed to discuss her PHQ-9 scores as part of the

evaluation of her subjective complaints.  (Pl.'s Mem. Supp. Mot. Summ. J. at 38.)  A

Patient Health Questionnaire ("PHQ") is completed by a patient prior to or at an

appointment and "is used to screen, diagnose, monitor, and measure the severity of

depression." *Ramo v. Colvin*, No. 13-cv-1233 (JRT/JJK), 2014 WL 896729, at *5 n.12 (D. Minn. Mar. 6, 2014). "As a self-administered exam, the PHQ-9 exam does not constitute a medical opinion which the ALJ must explicitly discuss." *Mapson v. Colvin*, No. 14-cv-1257 (SRN/BRT), 2015 WL 5313498, at *27 (D. Minn. Sept. 11, 2015). Because the content on a PHQ is derived exclusively from the patient's subjective complaints, it is subject to being credited or discredited for the same reasons as other subjective complaints. Here, the ALJ determined that the intensity, limiting effects, and persistence of Plaintiff's symptoms were not as severe as she claimed; this finding would also apply to the PHQ scores, whether or not the ALJ explicitly discussed them.

### 6.     The ALJ's Reference to a Normal EMG

Plaintiff submits that the ALJ erred by referring in the credibility evaluation to an EMG that is not in the record. (Pl.'s Mem. Supp. Mot. Summ. J. at 34 (citing R. 17).) In assessing the objective medical evidence, the ALJ remarked that "an EMG was reportedly normal." (R. 17.) The record to which the ALJ referred was a consultation progress note authored by Dr. Carrie P. Noran Jaeger, M.D., in January 2014, which reflected Plaintiff's self-report to Dr. Jaeger that a recent EMG was normal. (R. 1132.) Dr. Jaeger's corresponding examination findings were consistent with a normal EMG. Dr. Jaeger found no neurological defects or weaknesses, no muscle weakness, normal muscle bulk, normal gait, normal strength in the arms and legs, normal reflexes, and normal sensation. (R. 1134.) Plaintiff had restricted lumbar flexion, however, and tenderness to palpation. (R. 1134.) Dr. Jaeger thought Plaintiff would benefit from a holistic approach to her pain, and remarked, "I do not believe she is disabled. I do

believe she can do light duty and eventually return to normal work." (R. 1134-35.)

In addition, Plaintiff offers no reason why the ALJ should not have accepted her own report to a provider of a normal EMG. She never sought to correct or supplement the record with the EMG, nor has she shown that the EMG would add to the record or contradict her own statement to Dr. Jaeger. Finally, the EMG was one minor component of the ALJ's credibility analysis, and excluding it from the discussion would not undermine the ALJ's decision.

### 7.    Dr. Wengler's Independent Medical Examination Report

In considering the consistency of the objective medical evidence and Plaintiff's subjective complaints, the ALJ discussed an independent medical examination report completed by Dr. Robert A. Wengler, M.D., on January 23, 2015. (R. 17; *see* R. 2065-68.) The ALJ referred to a portion of the report in which Dr. Wengler noted no sensory or motor changes, positive straight-leg raise tests at 45 degrees, tenderness to palpation, and pain with range of motion testing. (R. 17.) The ALJ contrasted these findings with other treatment records reflecting negative straight leg raise tests, normal gait, no sensory deficits, normal strength, the ability to walk on the heels and toes, and the ability to rise from a seated position. (R. 17.) Plaintiff now faults the ALJ for not considering Dr. Wengler's statement that she was "totally disabled from the work activity as a photo stylist as she described it" and Dr. Wengler's findings that she had three herniated discs. (Pl.'s Mem. Supp. Mot. Summ. J. at 34 (citing R. 17, 2065).)

Plaintiff discusses Dr. Wengler's report in the context of the ALJ's credibility evaluation, so that is the context in which the Court will discuss it. The ALJ did not

disagree with Dr. Wengler's statement that Plaintiff could not perform her past relevant work as a photo stylist.  Indeed, the ALJ determined that she could not perform her past relevant work as a prop attendant or photo stylist.  (R. 20.)  That finding is therefore consistent with Dr. Wengler's statement.

As to Dr. Wengler's statement that Plaintiff had disc herniations in three locations, the ALJ gave Dr. Wengler's opinion no weight because it was a vocational opinion rendered for the purpose of worker's compensation, not a medical opinion rendered for the purpose of disability benefits, and because Dr. Wengler did not identify any specific physical limitations caused by the herniated discs.  (R. 17.)  These are valid reasons to reject a medical opinion.  *See* 20 C.F.R. § 404.1527(c)(3) (listing supportability as a factor to consider when deciding the weight to give a medical opinion); 20 C.F.R. § 416.927(c)(3) (same); *Strother v. Berryhill*, No. 4:16-cv-1221 (DDN), 2017 WL 4163924, at *6 (E.D. Mo. Sept. 20, 2017) (finding the ALJ did not err in giving little weight to the opinion of a physician who performed a one-time evaluation for worker's compensation purposes); *Brown v. Colvin*, No. 4:12-cv-3260, 2014 WL 200234, at *11 (D. Neb. Jan. 16, 2014) (finding the ALJ did not err in reducing the weight of an opinion made for worker's compensation benefits in part because the standards differed from those for social security benefits).  Moreover, an opinion that a claimant is medically disabled and unable to work, even if rendered under the relevant social security regulations, is not entitled to any deference because such a determination is reserved exclusively to the Commissioner.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Finally, as Dr. Wengler noted, imaging of Plaintiff's spine had revealed only "*mild* degenerative

changes . . . with *small* left-sided herniations," which caused only a "*slight* mass effect on the dural sac."  (R. 2066-67) (emphasis added).  A lumbar study showed only "a *small* right lateral recess protrusion at L5-S1," which only slightly displaced the right S1 nerve root.  (R. 2067) (emphasis added).  Thus, Dr. Wengler's findings do not support the extent and limiting effects of pain claimed by Plaintiff.

### 8. Objective Medical Evidence of Limitations in Walking, Sitting, and Standing

Plaintiff contends the ALJ should have accepted her testimony that she was very limited in her ability to walk, sit, and stand, because those symptoms are documented by objective medical evidence.  (Pl.'s Mem. Supp. Mot. Summ. J. at 35.)  But the records to which Plaintiff cites are either based on her self-reported limitations to providers, are not supported by examination or clinical findings, or indicate that the limitations were temporary or exaggerated.  (*See* R. 858, 861, 1045-48, 1083, 1090-91, 1094, 1102, 1338, 1475, 1555, 1653, 1703.)  Thus, the ALJ did not err in excluding them from the credibility analysis.  Moreover, as already noted, the ALJ was not required to discuss every piece of evidence in the record.  *See Wildman*, 596 F.3d at 966.

In addition, the ALJ cited multiple medical records that were inconsistent with Plaintiff's subjective complaints, such as MRI imaging that showed only slight protrusions and mild mass effect (R. 533); the normal EMG, as reported by Plaintiff to Dr. Jaeger, and Dr. Jaeger's contemporaneous examination findings (R. 1132-35); records of physical examinations documenting no ongoing neurological loss, negative straight leg raise tests, normal gait, no sensory deficits, full extremity strength, ability to

12

walk on heels and toes, and ability to rise from a seated position (R. 1132, 1458-61, 1463-66, 1573); and Plaintiff's self-reports of being able to stand and walk for at least two hours in an eight-hour day, walk up to an hour, walk nine blocks easily, walk up to a mile, and sit for ten to thirty minutes (R. 1045, 1092, 1458-61). (R. at 17.) The ALJ also cited independent medical examinations by Dr. Tilok Ghose, M.D., who found no restrictions or limitations based on a normal physical examination (R. 2125-30), and Dr. Rajan Jhanjee, M.D., who completed a similar report (R. 1231-37). (R. 17.) Though the ALJ did not give these opinions any particular weight under 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ did consider them insofar as they were inconsistent with Plaintiff's claimed limitations.

In sum, substantial evidence of record supports the ALJ's finding that Plaintiff's claimed limitations in walking, sitting, and standing were not supported by objective medical evidence.

### 9. The ALJ's Finding that the Diagnosis of Ankylosing Spondylitis Did Not Meet the Twelve-Month Durational Requirement

Part of Plaintiff's challenge to the ALJ's credibility analysis is to the ALJ's finding that a diagnosis of ankylosing spondylitis did not occur until December 2015 and thus did not meet the twelve-month durational requirement. (Pl.'s Mem. Supp. Mot. Summ. J. at 34.) In support of her argument, Plaintiff contends that the ALJ did not account for Dr. Parastoo Fazeli's treatment record dated December 18, 2015, in which the doctor "highly suspect[ed] ankylosing spondylitis" (R. 1535); an MRI on December 29, 2015 (R. 1537); Dr. Orlando Charry-Rodriguez's treatment record dated January 27,

2016 (R. 1567-75); and Dr. Zeller's opinion dated March 18, 2016, in which she suspected that Plaintiff may have begun experiencing flareups from ankylosing spondylitis as far back as 2012 (R. 2089-98).

The Court questions whether this argument belongs in the credibility discussion, but will address it briefly here since that is the context in which it was presented by Plaintiff. Whether Plaintiff's symptoms resulted from ankylosing spondylitis or some other condition did not affect the ALJ's consideration of her subjective complaints. The ALJ considered the severity, persistence, and limiting effects of all of her claimed symptoms, regardless of their etiology. Consequently, the ALJ's finding that a diagnosis of ankylosing spondylitis did not occur until December 2015 simply had no effect on the credibility analysis.

## 10. The Effect of Plaintiff's Pain on Her Depression

Plaintiff argues the ALJ failed to consider how flareups in pain affected her depression in evaluating her claimed psychological symptoms. (Pl.'s Mem. Supp. Mot. Summ. J. at 38.) To the contrary, the ALJ specifically considered and discussed the relationship between Plaintiff's physical and mental symptoms. (R. at 19.) The ALJ found Plaintiff's mental symptoms were overstated and not credibly reported, consistent with the Minnesota Multiphasic Personality Inventory-II test administered by Dr. Marvin L. Logel, Ph.D. (R. 19; *see* R. 2076, 2085.) As the ALJ observed, Dr. Logel concluded that Plaintiff should return to work part-time and increase to full-time work with no mental limitations. (R. 2087.) The ALJ further noted that Plaintiff's mental health treatment had been conservative and that mental status examinations were inconsistent

with her claimed mental symptoms. (R. 19; *see* R. 1458-61, 1564-65, 1568, 1644, 1697, 2069-87.) The ALJ specifically cited a treatment note from Dr. Bernadette Lee Clevenger, M.D., in January 2016, in which Dr. Clevenger wrote that Plaintiff reported crying the previous week and was tearful at the appointment due to a flareup of pain, but Dr. Clevenger recommended food sensitivity testing and did not refer her for mental treatment. (R. 19; *see* R. 1644.) The Court finds the ALJ adequately considered the effects of Plaintiff's pain on her depression in evaluating her subjective complaints.

**B.      Whether the ALJ Erred in Evaluating the Opinions of Plaintiff's Treating Providers**

A treating source's opinion on the nature and severity of a claimed impairment is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see* 20 C.F.R. § 416.927(c)(2). Correspondingly, an ALJ need not give controlling weight to an opinion that is not well-supported by clinical findings or laboratory techniques or is inconsistent with other substantial evidence. *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). If the opinion of a treating source is not afforded controlling weight, the ALJ must consider the following factors in deciding what weight is due: (1) the existence of an examining relationship; (2) the nature of the treatment relationship, such as length of treatment and frequency of examination; (3) the degree to which the opinion is supported by medical evidence such as medical signs and laboratory findings; (4) consistency with the record; (5) the source's specialty; and (6) any other relevant factors. 20 C.F.R.

§§ 404.1527(c), 416.927(c).  The ALJ is not required to explicitly discuss each and every factor, as long as he or she considers all the factors and gives good reasons for the weight assigned.  *See Combs v. Colvin*, No. 8:12-cv-429, 2014 WL 584741, at *11 (D. Neb. Feb. 12, 2014); *Derda v. Astrue*, No. 4:09-cv-1847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011).

Plaintiff argues the ALJ erred in the weight given to the opinions of Dr. Carrie P. Noran Jaeger, M.D.; Molly McNaughton, C.N.P.; Dr. Bernadette Clevenger, M.D.; Dr. Parastoo Fazeli, M.D.; Dr. Marvin L. Logel, Ph.D.; and Dr. Kristen Zeller, M.D. Plaintiff also faults the ALJ for not discussing opinions from Julia Fischer, D.P.T.; Dr. Orlando Charry-Rodriguez, M.D.; Donald Darling, D.P.T.; Dr. Mary Beth Lardizabel, D.O.; Stephanie Drew, C.N.P.; and Mark Roa, M.A., L.P.

### 1.  Dr. Jaeger

Plaintiff claims that the ALJ erred by giving only some weight to Dr. Jaeger's January 2014 opinion that Plaintiff could do light-duty work and needed work hardening. (Pl.'s Mem. Supp. Mot. Summ. J. at 29, 41; R. 18, 1132-35.)  Dr. Jaeger's treatment note is summarized *supra* Part III.A.6.

Plaintiff does not identify a specific reason why the ALJ's consideration of Dr. Jaeger's report was erroneous.  (Pl.'s Mem. Supp. Mot. Summ. J. at 29, 41.) She simply lists Dr. Jaeger as one of the many providers whose opinion the ALJ ostensibly erred in discussing.  Plaintiff's failure to develop this argument results in a waiver.  *See Johnson v. Comm'r of Soc. Sec.*, No. 11-cv-1268 (JRT/SER), 2012 WL 4328413, at *17 (D. Minn. July 11, 2012), *R. & R. adopted*, 2012 WL 4328389 (D. Minn.

Sept. 20, 2012).

Furthermore, Dr. Jaeger's clinical findings that Plaintiff had no neurological defects or weaknesses, no muscle weakness, normal muscle bulk, normal gait, normal strength in the arms and legs, normal reflexes, and normal sensation, and Dr. Jaeger's statement that Plaintiff was not disabled and could perform light-duty work, actually support the ALJ's finding that Plaintiff could do a limited range of sedentary work. Finally, the ALJ gave a good reason to accord only some weight to Dr. Jaeger's opinion: Dr. Jaeger did not explain what functional restrictions and other limitations were encompassed in her definition of "light duty" work. (R. at 18; *see* R. 1135); *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

## 2. Molly McNaughton

Plaintiff contends the ALJ erred in giving no weight to nurse practitioner Molly McNaughton's opinion that Plaintiff should be limited to working no more than five hours a day. (Pl.'s Mem. Supp. Mot. Summ. J. at 29.) The ALJ rejected the opinion because there was no supporting basis given for that limitation. (R. 18.) The ALJ also noted that the corresponding treatment note pertained to Plaintiff's impairments before the alleged onset of disability date.

As with Dr. Jaeger, Plaintiff does not identify a specific reason why the ALJ's consideration of McNaughton's opinion was erroneous. She simply includes McNaughton in a list of providers whose opinions the ALJ discussed and discounted. (Pl.'s Mem. Supp. Mot. Summ. J. at 29, 41.) Plaintiff's failure to develop her argument results in a waiver. But even so, the ALJ gave two good reasons for discounting the

weight given to McNaughton's suggestion that Plaintiff be limited to working only five hours a day: (1) McNaughton did not explain the rationale for the limitation, and (2) the opinion related to Plaintiff's condition as it existed before the relevant time period. (R. at 18.) Accordingly, the ALJ did not err in evaluating McNaughton's opinion.

### 3.  Dr. Clevenger

Plaintiff's primary care physician Dr. Clevenger opined that Plaintiff would have the following work restrictions due to symptoms from mild/early sacroiliitis, degenerative disc disease, and chronic musculoskeletal pain: unable to sit more than one hour in an eight-hour workday, unable to stand more than one hour in an eight-hour workday, and needing to walk five minutes every twenty minutes, shift positions at will, take unscheduled breaks. (R. 1554-55.) Dr. Clevenger further opined that Plaintiff could never use her hands to grasp, turn, or twist objects; that Plaintiff could never lift or carry any amount of weight, twist, stoop, or crouch; and that pain, muscle weakness, limitation of motion, and side effects of medication restricted the use of her upper extremities. (R. 1555-56.) Further, Plaintiff would be "off task" 25% of the day, could not perform even low-stress jobs, and would miss more than four days of work a month. (R. 1556.)

The ALJ found the work restrictions were not entitled to any weight because they were not supported by physical examination results or clinical findings.[4] (R. 18.) In making that determination, the ALJ identified and discussed the relevant medical evidence;  specifically, progress notes of examinations—including Dr. Clevenger's

---

[4]  The ALJ accepted the opinion of Dr. Clevenger insofar as it limited Plaintiff to a range of sedentary work.

progress notes—generally documented normal findings, including normal upper extremity strength, normal muscle strength, normal range of motion, and normal mobility.  The ALJ accepted Dr. Clevenger's opinion to the extent it corresponded with an ability to perform a range of sedentary work.  (R. 18.)

Plaintiff contends the ALJ erred by not giving any weight to the work restrictions opined by Dr. Clevenger.  (Pl.'s Mem. Supp. Mot. Summ. J. at 42.)  The Court disagrees. The limitations in Dr. Clevenger's opinion are almost entirely unsupported by clinical or laboratory diagnostic techniques, and are also inconsistent with other substantial evidence.  *See* 20 C.F.R. § 404.1527(c)(2), (3), (4); § 416.927(c)(2), (3), (4).  As discussed *supra* and *infra*, physical examinations generally revealed normal strength in the extremities, full strength and use of the hands, normal muscle strength, and only mildly to moderately restricted range of motion and mobility.  Moreover, Dr. Clevenger did not provide any support or rationale for her opinion that Plaintiff would miss more than four days of work a month.  *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (stating that "a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement").  Consequently, Dr. Clevenger's opinion was not entitled to any weight, much less controlling weight.  The ALJ gave good reasons for the weight she gave Dr. Clevenger's opinion, and those reasons are well-supported by substantial evidence of record.

### 4.     Dr. Fazeli

Dr. Fazeli opined that Plaintiff would be limited to less than full-time sedentary work and would miss work more than four times a month.  (R. 1558-59.)  The ALJ gave

this opinion no weight because Dr. Fazeli indicated that he expected Plaintiff to improve in six to twelve months and he did not provide any reasons why Plaintiff would miss more than four days of work a month. (R. 18.)

These are valid reasons to reduce the weight of Dr. Fazeli's opinion. An impairment "must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909. Yet Dr. Fazeli noted that Plaintiff would "possibly" be able to return to work in less than twelve months. (R. 1558.) It is clear from Dr. Fazeli's opinion that he considered Plaintiff's symptoms relatively impermanent and remediable with medication. As to his opinion that Plaintiff would miss more than four days of work a month, that was not only impermanent but was also a conclusory statement not tied to any rationale or particular findings. *See Hamilton*, 518 F.3d at 610. Notably, the ALJ accepted Dr. Fazeli's opinion to the extent it corresponded with an ability to perform a range of sedentary work. (R. 18.)

### 5. Dr. Logel

Plaintiff contends the ALJ erred in giving only some weight to the opinion of Dr. Logel, who performed an independent psychological evaluation. Plaintiff does not articulate a particular reason why the ALJ's grant of some weight to the opinion was erroneous; she simply lists Dr. Logel as one of the many providers whose opinions the ALJ discussed and discounted. (Pl.'s Mem. Supp. Mot. Summ. J. at 29, 41.) Plaintiff's failure to develop a specific argument concerning Dr. Logel operates as waiver of the argument.

Moreover, the only aspect of Dr. Logel's opinion the ALJ did not credit was the

suggestion that the diagnosis of a somatic symptom disorder should further reduce Plaintiff's RFC. The ALJ explained that this diagnosis did not affect the RFC because Dr. Logel ultimately concluded that Plaintiff could "return to work on a graduated schedule . . . starting with two hours per day for the first two weeks and increasing by two hours per work day at two-week intervals thereafter, up to full-time work." (R. 19; *see* R. 2087.) In light of the temporary nature of the suggested work limitations, the ALJ did not err in finding that Dr. Logel's diagnosis of a somatic symptom disorder would not affect Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c) (in assessing a claimant's mental abilities, the ALJ considers the effects on work ability "on a regular and continuing basis"). Consequently, the ALJ did not err in evaluating Dr. Logel's opinion.

### 6. Dr. Zeller

On March 18, 2016, Dr. Zeller performed an independent medical evaluation of Plaintiff. (R. 2089-98.) Dr. Zeller documented physical examination findings of a normal gait, normal flexion and extension, normal stability, reduced lumbar spine range of motion, spine pain, tenderness to palpation along the spine, and full strength and range of motion in the wrists, elbows, shoulders, ankles, knees, and hips. (R. 2090-91.) Dr. Zeller took note of an MRI on December 29, 2015, that revealed "no erosive changes" in the sacroiliac joints and "possible mild sacroiliitis." (R. 2095.) She also documented a recent diagnosis of ankylosing spondylitis by Dr. Fazeli in December 2015. (R. 2095.)

Dr. Zeller distinguished Plaintiff's previous, work-related injuries, which she

concluded were "certainly" not disabling, from the ankylosing spondylitis diagnosis, which she believed had gone undiagnosed but could be treated successfully with medication. (R. 2096-97.) Dr. Zeller found that no other symptoms or conditions could be considered disabling. (R. 2098 ("Her disability is solely related to her ankylosing spondylitis.").) She commented that Plaintiff's doctors had focused, wrongly, on previous work injuries as the cause of her pain and other symptoms, and stated that Plaintiff's "case is a classic presentation of flaring ankylosing spondylitis, which can be quite disabling to some people, particularly when it is untreated or uncontrolled as is the case with Ms. Plaintiff." (R. 2098.) Dr. Zeller believed Plaintiff would benefit from treatment from a rheumatologist and finding a course of medication that could improve her symptoms. (R. 2097.) Until Plaintiff's symptoms were controlled, however, Dr. Zeller believed Plaintiff would not be able to work. (R. 2097.) Dr. Zeller therefore thought Plaintiff would be entitled to disability benefits, but only until her ankylosing spondylitis was treated and under control. "Then, she can go off Social Security Disability. Again, as noted previously, her disability is not related to any of her claimed work injuries." (R. 2098.)

The ALJ did not give any weight to the opinion that Plaintiff was not able to work because that opinion was rendered for the purpose of obtaining worker's compensation benefits, was not supported by contemporaneous clinical findings, and indicated that work restrictions were temporary and that symptoms were remediable with proper medication. These are legitimate reasons for giving no weight to the opinion that Plaintiff was not able to work. 20 C.F.R. §§ 404.1527(c)(3), (4); 404.1545(c);

416.927(c)(3), (4); 416.945(c); *Strother*, 2017 WL 4163924, at *6; *Brown*, 2014 WL 200234, at *11. Dr. Zeller was clearly under the misimpression that DIB and SSI may be awarded on a short-term basis. Furthermore, an opinion that a claimant is medically disabled and unable to work is not entitled to any deference. 20 C.F.R. §§ 404.1527(d), 416.927(d). In sum, the ALJ did not err in giving no weight to Dr. Zeller's opinion that Plaintiff was not able to work until she got her ankylosing spondylitis under control.

### 7. Julia Fischer

Plaintiff identifies two treatment records from physical therapist Julia Fischer, one in April 2015 and one in June 2015, that she claims the ALJ did not explicitly discuss. (Pl.'s Mem. Supp. Mot. Summ. J. at 41 (citing R. 1090-92).) In fact, the ALJ specifically mentioned Plaintiff's report to Fischer that she could walk nine blocks without her back hurting. (R. 17; *see* R. 1092.) As to other aspects of the treatment records, an ALJ is not required to discuss every piece of evidence in the record, *Wildman*, 596 F.3d at 966, and Plaintiff has not identified the specific opinion the ALJ failed to consider. Finally, the treatment records are consistent with the ALJ's findings; in particular, Fischer documented "fairly good range of motion in her cervical and lumbar spine" and "minimal complaints of pain" in April 2015. (R. 1092.) The Court finds the ALJ did not err in her consideration of Fischer's physical therapy records.

### 8. Dr. Charry-Rodriguez

Plaintiff contends the ALJ erred by failing to mention an opinion by Dr. Charry-Rodriguez. Dr. Charry-Rodriguez completed a pain management evaluation at the request of therapist Mark Roa on January 27, 2016. (R. 1567-75.) Plaintiff told

Dr. Charry-Rodriguez at the evaluation that her pain was mainly located in her neck and low back; averaged a five on a ten-point scale; worsened with occasional flareups; temporarily improved with acupuncture, chiropractic treatment, counseling, yoga, medications, ice, hot baths, and rest; and affected almost all activities, including sleep. (R. 1570.)  A review of the musculoskeletal system was negative, except for arthritis, back and neck pain, and stiffness.  (R. 1572.)  On physical examination, Dr. Charry-Rodriguez wrote "None" and "Appears calm and comfortable" under "Pain behavior." (R. 1572.)  Dr. Charry-Rodriguez described Plaintiff's posture as normal, her spine as well-aligned but with a decreased range of motion, the range of motion in her joints as within functional limits, her gait as normal, and her lower and upper extremity strength as 5/5.  (R. 1572-73.)  He did note low back pain with FABER and Gaenslen's maneuvers. (R. 1573.)  Dr. Charry-Rodriguez's assessment was chronic low back pain due to "recently diagnosed ankylosing spondylitis and remote history of low back trauma," neck pain, depression, anxiety, deconditioning, and "chronic pain syndrome with significant psychosocial components and maladaptive behaviors; symptom focused with poor self-care habits."  (R. 1568.)  His impressions were (1) a subtle bone marrow edema with minimal enhancement along the iliac side of the inferior left sacroiliac joint; and (2) mild disc desiccation at L5-S1.  (R. 1574.)  Dr. Charry-Rodriguez hoped for a "rapid functional rehabilitation."  (R. 1567.)

Contrary to Plaintiff's argument, the ALJ not only mentioned—but discussed and credited—Dr. Charry-Rodriguez's evaluation.  (R. 17 (discussing Dr. Charry-Rodriguez's treatment record dated January 27, 2016; referring to numerous findings therein; and

referencing "27F/14," which is a page of the evaluation).)  Moreover, Dr. Charry-Rodriguez's evaluation is consistent with and provides substantial evidence for the ALJ's decision.

### 9.    Donald Darling

Plaintiff faults the ALJ for not considering a letter from physical therapist Donald Darling dated March 2, 2016.  (Pl.'s Mem. Supp. Mot. Summ. J. at 44.)  In that letter, Darling described findings made at an initial appointment earlier that day of "significant muscle and soft tissue imbalances," tight musculature, poor core strength, deconditioning, positive upper limb tension tests bilaterally, and significant trigger points.  (R. 1648.)  Darling expected significant improvement in six to eight months.  (R. 1649.)

The Court finds the ALJ did not err in not discussing Darling's letter.  First, an ALJ is not obligated to discuss every treatment record.  *Wildman*, 596 F.3d at 966.  Second, Darling's treatment record was not a "medical opinion," as defined by 20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  *See* 20 C.F.R. § 404.1527(a)(1).  As a physical therapist, Darling was not an "acceptable medical source."  20 C.F.R. § 404.1513(a) (effective Sept. 3, 2013; amended Mar. 26, 2017).[5] Nor did the letter include a diagnosis or an independent evaluation of what Plaintiff could

---

[5]  The Court applies the version of the regulation in effect on the date of the ALJ's decision.

do despite her impairments and restrictions.

### 10.    Dr. Lardizabel

Plaintiff submits the ALJ failed to consider Dr. Lardizabel's opinion concerning the mental effects of pain and other mental impairments.  But an ALJ need not discuss every treatment record, *Wildman*, 596 F.3d at 966, and Dr. Lardizabel's treatment notes do not constitute a "medical opinion" as defined by §§ 404.1527(a)(1) and 416.927(a)(1), because they do not reflect Dr. Lardizabel's judgments about what Plaintiff could still do despite her impairments and restrictions.

Furthermore, Plaintiff cites primarily the subjective complaints she reported to Dr. Lardizabel, rather than to Dr. Lardizabel's objective findings.  Those objective findings included appropriate responses to questions, fluent and articulate speech, normal memory, normal concentration, appropriate judgment and insight, good mood, and bright affect (R. 1376, 1385, 1609, 1632), and those findings are consistent with the ALJ's assessment of Plaintiff's mental impairments at step three and step four of the sequential evaluation.  (R. 14-16, 19.)  Consequently, the ALJ did not err concerning Dr. Lardizabel's treatment records.

### 11.    Stephanie Drew

 Plaintiff argues the ALJ failed to consider and discuss the opinions of nurse practitioner Stephanie Drew, but Plaintiff does not identify any specific opinion she believes the ALJ should have considered.  (Pl.'s Mem. Supp. Mot. Summ. J. at 29, 41, 45.)  As such, Plaintiff has waived this argument.

Moreover, though Plaintiff lists several treatment records by Drew, the portions of

the records identified by Plaintiff are not "medical opinions" as defined by 20 C.F.R.

§§ 404.1527(a)(1) and 416.927(a)(1), and Drew is not an "acceptable medical source" as

defined by 20 C.F.R. § 404.1513(a) (effective Sept. 3, 2013; amended Mar. 26, 2017).

Finally, the ALJ was not required to discuss every treatment record, *Wildman*, 596 F.3d

at 966, but even so, many of the treatment records from Drew contain substantial

evidence in support of and consistent with the ALJ's findings  (*See, e.g.*, R. 1219-20

(normal mood and affect, normal gait, normal lower extremity muscle tone, normal lower

extremity strength, and mild spasm); 1226-29 (normal upper extremity strength and

improved functioning with medication); 1262 (denial of handicap placard in light of

Plaintiff's report of ability to walk for one hour); 1267 (recommendation that Plaintiff

return to work part-time).)  The ALJ did not err with respect to Drew's treatment records.

### 12.    Mark Roa

Plaintiff asserts the ALJ erred by failing to consider the opinion of Mark Roa,

M.A., L.P.  But Roa did not offer a "medical opinion" as defined by §§ 404.1527(a)(1)

and 416.927(a)(1), because he never opined what Plaintiff could or could not do in view

of her impairments and restrictions.

As far as the treatment records authored by Roa, contrary to Plaintiff's argument,

the ALJ did specifically consider and discuss relevant evidence.  (R. 19.)  Specifically,

the ALJ noted that Roa documented good eye contact, logical thoughts, tight

associations, normal affect, and appropriate conversation.  (R. 19.)  The ALJ was not

required to discuss every treatment record from Roa.  *See Wildman*, 596 F.3d at 966.

Nevertheless, the Court has reviewed the other records and finds that other objective

findings by Roa are consistent with and support the ALJ's findings. (*See, e.g.*, R. at 1341-42 (cooperative behavior, appropriate eye contact, normal speech, normal gait and motor coordination, normal attention and concentration, oriented to place and time, organized thought processes, no impairment in memory, intact associations, normal mood, appropriate affect, above-average intelligence, and good judgment and insight); R. 1516-17 (alert, oriented, good eye contact, logical thoughts, no speech or language problems, normal affect, and appropriate mood).)

### C.     Whether the ALJ Framed an Erroneous Hypothetical Question

Plaintiff contends the ALJ did not propound an adequate hypothetical question to the vocational expert at the hearing because the question did not include all of Plaintiff's impairments and limitations. A hypothetical question posed to a vocational expert is considered sufficient when it "sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2011). Here, the ALJ included in the hypothetical question all of the impairments she found true and supported by substantial evidence. Consequently, the ALJ did not err in framing the hypothetical question.


Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff Sheila A.'s Motion for Summary Judgment [Doc. No. 17] is **DENIED**; and

2.  Commissioner Nancy A. Berryhill's Motion for Summary Judgment [Doc. No. 22]

is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: September 24, 2018         s/ *Hildy Bowbeer*
                                      HILDY BOWBEER
                                      United States Magistrate Judge